UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARIO JOSE ORTIZ, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION H-12-3580 |
| § | |
| CITIMORTGAGE, INC., § | |
| § | |
| *Defendant*. § | |

**ORDER**

Pending before the court is a motion to dismiss filed by defendant, Citimortgage, Inc. ("CMI"). Dkt. 6. Plaintiff Mario Jose Ortiz has requested that the court deny the motion or, alternatively, grant him leave to amend. Dkt. 8. Having considered the motion, responsive briefing, and applicable law, the court is of the opinion that CMI's motion to dismiss (Dkt. 6) should be GRANTED IN PART AND DENIED IN PART.

**I. BACKGROUND**

Ortiz purchased a home at 11102 Fallcrest Drive, Houston, Texas 77065, on July 11, 2003. Dkt. 1-4. ABN AMRO Mortgage Group, Inc., ("ABN") provided financing for Ortiz's purchase under a mortgage note. *Id*. To secure his obligations under the note, Ortiz signed a deed of trust that irrevocably granted and conveyed title to the trustee, with power of sale. *Id*. In September 2011, Ortiz became ill and required surgery. *Id*. Ortiz explains that he could not make mortgage payments because, due to his medical condition, he was hospitalized for five weeks and, afterward, unemployed for eight months. *Id*. On December 13, 2011, Ortiz received a notice from CMI informing him that his loan was in default, and a payment of $8,128.92, inclusive of late charges and delinquency expenses, was necessary to cure the default. *Id*. The notice also stated that failure to

cure the default by January 12, 2012, would result in acceleration of the mortgage note and possible sale of the property. *Id*. Ortiz obtained and mailed a cashier's check for the requisite amount on January 11, 2012. *Id*. Ortiz asserts that CMI acknowledged receipt of the check and reinstated the mortgage. *Id*.

Ortiz alleges that CMI sent a notice of foreclosure to Ortiz on August 9, 2012. Dkt. 1-4. It is unclear from the facts alleged in the complaint what triggered the notice. In the notice of foreclosure, CMI informed Ortiz that the foreclosure sale was scheduled for September 4, 2012. Dkt. 1-4, Ex. E. The foreclosure was then postponed because Ortiz submitted an application for a loan modification under the Home Affordable Modification Program ("HAMP"). Dkt. 1-4. HAMP is a program established by the U.S. Department of the Treasury, the Federal Housing Finance Agency, the Federal National Mortgage Association, and Freddie Mac, pursuant to the authority provided in the Emergency Economic Stabilization Act of 2008. 12 U.S.C. §§ 5201 *et seq*. Under HAMP, a lender cannot foreclose on a home during the application or the modification process. *Id*. On November 8, 2012, CMI informed Ortiz that his HAMP application was denied because CMI did not receive certain documents necessary for modification calculations. Dkt. 1-4. Ortiz alleges, however, that he sent all the required documents to CMI. *Id*. CMI posted Ortiz's home for foreclosure on November 6, 2012, two days before it informed him that his HAMP application was denied. *Id*.

Ortiz filed a lawsuit against CMI in the 133rd Judicial District Court of Harris County, Texas on November 28, 2012. Dkt. 1-4. In his original complaint, Ortiz asserts claims against CMI for "breach of contract constituting wrongful foreclosure" due to failure to properly notice the foreclosure, promissory estoppel, and interference with an existing contract. Dkt. 1-4. At the heart of most of Ortiz's claims is the affirmation that CMI lacked legal standing to foreclose on Ortiz's

property because there is a gap in the chain of title from the original mortgagee, ABN, to CMI. *Id.* The petition seeks relief in the form of a temporary injunction and a declaratory judgment under Texas law stating that the foreclosure is null and void and unenforceable because CMI does not have standing to enforce the note and the Deed of Trust, and that CMI did not comply with the pre-foreclosure notice provisions in the Deed of Trust. *Id.*

The state court entered a temporary restraining order that prohibited CMI from interfering or excluding Ortiz from his home pending final judgment in this case. Dkt. 1-4. On November 29, 2012, CMI removed the case to this court, asserting that this court has diversity jurisdiction. *Id.* On January 18, 2013, CMI filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 6.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must . . . raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. While the allegations need not be overly detailed, a plaintiff's pleadings must still provide the grounds of his entitlement to relief, which "requires more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (129 S.Ct. 1937) (2009) ("naked assertion[s]" devoid of "further factual enhancement," along with "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth).

"[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

Moreover, demonstrating the facial plausibility of a claim requires a plaintiff to establish "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. It is not enough that a plaintiff allege the mere possibility of misconduct; it is incumbent to "show[] that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Iqbal*, 556 U.S. at 679. The court may dismiss a complaint under Rule 12(b)(6) if either the complaint fails to assert a cognizable legal theory or the facts asserted are insufficient to support relief under a cognizable legal theory. *Stewart Glass & Mirror, Inc. v. U.S.A. Glas, Inc.*, 940 F. Supp. 1026, 1030 (E.D. Tex. 1996).

### III. ANALYSIS

CMI asserts that Ortiz fails to assert a claim for which relief can be granted because (1) Ortiz lacks standing to challenge the assignment of the mortgage to CMI and CMI's ability to foreclose because Ortiz is neither a party nor a third party beneficiary of the loan assignment; (2) Ortiz's lack of standing further prevents Ortiz from challenging CMI's interest in the loan by an interference with an existing contract claim; (3) Ortiz does not adequately assert a claim for wrongful foreclosure due to improper notice because notice is irrelevant to the three elements of wrongful foreclosure;[1] (4) the promissory estoppel claim is barred by the existence of a contract and by the statute of frauds; and (5) Ortiz does not plead substantive claims and thus, declaratory relief should be denied. Dkt. 6. Ortiz asserts claims for "breach of contract constituting wrongful foreclosure," tortious interference with an existing contract, promissory estoppel, declaratory judgment, injunctive relief, and attorney's

---

[1] In Ortiz's original pleadings, he alleged a "breach of contract constituting a wrongful foreclosure" claim. Dkt. 1-4. Although the heading of the claim is unclear, Ortiz clarifies in his pleading that he "intends to prove the following essential elements of a breach of contract cause of action." *Id*. CMI appears to have interpreted the claim to be, instead, a wrongful foreclosure claim, and briefed the issue accordingly. Dkt. 6. As CMI does not address the breach of contract claim, this court will not consider it in the motion to dismiss.

4

fees. Dkt. 1-4. Ortiz also argues that CMI must prove the transfer by which it acquired the note to have standing to foreclose. *Id*. In its motion to dismiss, CMI alleges that Ortiz is trying to delay eviction and fails to state any claims upon which relief can be granted. Dkt. 6. In response, Ortiz requests that the court deny CMI's motion to dismiss; alternatively, he moves for leave to file an amended petition. Dkt. 8.

**A.      Standing**

Ortiz alleges that CMI does not have standing to foreclose on the note because CMI did not provide proof that the lien was appropriately transferred from ABN to CMI. Dkt. 1-4. Ortiz further asserts that the lien transfer was not filed in the Harris County property records, and thus, the transfer did not occur. *Id*. CMI asserts that *Ortiz* does not have standing to challenge the assignment of the lien because Ortiz is not a party to the loan assignment or any agreements between CMI and the original mortgagee. Dkt. 6. Ortiz responds that he is not requesting proof of the assignment, reminiscent of the discredited "show-me-the-note" theory; instead, he requests that CMI show its authority to foreclose. *See Shelton v. Flagstar Bank*, *F.S.B.*, No. H-11-3805, 2012 WL 1231756 (S.D. Tex. Apr. 12, 2012) (discussing the differences between the "show-me-the-note" theory and showing authority to foreclose); Dkt. 8 (requesting proof of authority to foreclose).

Numerous courts in Texas have noted that "a non-party to the assignment of the lien . . . lacks standing to contest [the lien]." *Munoz v. HSBC Bank USA, N.A.*, No. H–12–0894, 2013 WL 265982, at *12 (S.D. Tex. Jan. 22, 2013) (Harmon, J.); *Herrera v. Wells Fargo Bank, N.A.*, Civil Action No. H-13-68, 2013 WL 961511, at *8 (S.D. Tex. Mar. 12, 2013) (Harmon, J.) (determining that mortgage borrowers may not "contest assignment of the Note and Deed of Trust from the original lender to another. . . . To establish standing, a plaintiff must assert his own legal rights and interest and cannot rely on the legal right and interest of a third party.") (collecting cases); *DeFranceschi v.*

5

*Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 623 (S.D. Tex. 2011) (same); *Eskridge v. Fed. Home Loan Mortg. Corp.*, No. W-10-CA-285, 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24, 2011) (same).

Other courts, however, have held that a mortgagor may have standing depending on the nature of the alleged claims. In *Green v. Bank of America N.A.*, No. H–13–1092, 2013 WL 2417916 (S.D. Tex. Jun. 4, 2013) (Rosenthal, J.), the court "distinguished between assignments that are void and those that are merely voidable." 2013 WL 2417916, at *2. "Texas has long followed the common law rule which permits a debtor to assert against an assignee any ground that renders the assignment void or invalid." *Miller v. Homecomings Fin., L.L.C.*, No. 4:11-CV-04416, 2012 WL 3206237, at *5 (S.D. Tex. Aug. 8, 2012) (Smith, J.) (referencing *Tri-Cities Constr. Inc. V. Am Nat'l Ins. Co.*, 523 S.W. 2d 426 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ); *see Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 291 (1st Cir. 2013) (determining that a mortgagor does not have standing to challenge a mortgage assignment if the premise for the challenge would "render [the assignment] merely voidable at the election of one party but otherwise effective to pass legal title"); *Tyler v. Bank of Am., N.A.*, No. SA-12-CV-00909-DAE, 2013 WL 1821754, at *5 (W.D. Tex. Apr. 29, 2013); *Preston v. Seterus, Inc.*, No. 3:12-CV-2395-L, 2013 WL 1091272, at *9 (N.D. Tex. Mar. 15, 2013); *Rice v. Bank of New York*, No. 4:11-CV-04220, 2012 WL 3685981, at *2 (S.D. Tex. Aug. 24, 2012) (Smith, J.). *See generally Commonwealth Prop. Advocates, L.L.C., v. Mortg. Elec. Registration Sys.*, 680 F.3d 1194 (10th Cir. 2011) (establishing that mortgagors have both Article III standing and prudential standing in challenging the transfer of a debt instrument).

> The law is settled that the obligors of a claim may defend the suit brought thereon on any ground which renders the assignment void, but may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not pay the same claim twice.

*Tri-Cities*, 523 S.W. 2d at 430 (citing *Glass v. Carpenter*, 330 S.W. 2d 530, 537 (Tex. Civ. App. 1959)). "This rule accords with long-established principles of contract law. A void contract is 'invalid or unlawful from its inception' and therefore cannot be enforced." *Tyler*, 2013 WL 1821754, at *5 (citing 17A C.J.S. Contracts § 169) (2013).

      Here, Ortiz argues that the assignment of the note and deed of trust from ABN to CMI never occurred because CMI did not provide evidence regarding the assignment of the note and deed of trust, and the assignment was not recorded in the Harris County property records. Dkt. 1-4. "Because an unauthorized contract would not bind the principal, no rights would be created at all, which would suggest that the contract would be *void*." *Routh v. Bank of Am., N.A.*, No. SA-12-CV-244-XR, 2013 WL 427393 (W.D. Tex. Feb. 4, 2013) (emphasis added). If the assignment of the note and deed of trust truly did not occur, as Ortiz alleges, then the original lender, ABN, may not be bound by the assignment. Because the court must accept the pleaded facts as true, Ortiz has standing to challenge whether the assignment was invalid. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.")

**B.    Tortious Interference with an Existing Contract Claim**

      CMI argues that Ortiz does not state a claim for tortious interference with an existing contract because CMI is the mortgage servicer of Ortiz's mortgage loan. Dkt. 6. In his complaint, Ortiz alleges that CMI is not the mortgagee, the mortgage holder, or the mortgage servicer of the mortgage loan, and, thus, may not foreclose on the house and interfere with the note and deed of trust. Dkt. 1-4. In *Henry v. Chase Home Financial, L.L.C.*, the homeowner asserted a quiet title claim that alleged, among other contentions, that Chase was not the "'owner or holder of any promissory note

7

encumbering the property.'" No. H–11–0668, 2011 WL 6057505, at *4 (S.D. Tex. Dec. 6, 2011) (Rosenthal, J.). In contrast to decisions concerning the issue of standing alone, the court found that in a quiet title claim whether a financial institution owns or holds a note is a "factual and not a conclusory allegation," and the court denied the defendant's motion to dismiss on that issue. *Id*. at *5.

Here, the alleged tortious interference turns on whether CMI is party to the mortgage, not whether CMI has standing to foreclose. Because Ortiz alleges that CMI is not the mortgagee, the mortgage holder, or even the mortgage servicer, after viewing the facts in the light most favorable to Ortiz, the court finds that CMI's motion to dismiss the tortious interference claim should be, and therefore is DENIED. This decision does not preclude CMI, however, from moving for summary judgment on the ground that CMI is the mortgagee, mortgage holder, or mortgage servicer of the mortgage loan.

**C.     Promissory Estoppel**

Ortiz asserts a claim for promissory estoppel, alleging that CMI promised Ortiz that if he "[paid] a certain amount of money . . . his home [would] not be foreclosed. . . . It was foreseeable that [Ortiz] would rely on that promise, and . . . substantial reliance by [Ortiz] was to his detriment because [CMI] foreclosed on [Ortiz's] home." Dkt. 1-4. CMI argues that Ortiz failed to sufficiently plead the facts to support a claim for promissory estoppel, and that the claim is barred by the statute of frauds.[2]  Dkt. 6.

---

[2] Ortiz mentions briefly in the complaint that CMI "violated HAMP guidelines" when CMI foreclosed on Ortiz's house before he received the letter denying him a loan modification. Dkt. 1-4. It is unclear whether he is attempting to state a claim for the alleged HAMP violation. However, although the Fifth Circuit has yet to rule on the issue, the majority of courts," including this court, "have held that HAMP does not create a private right of action in a borrower." *Tran v. BAC Home Loans Servicing, LP*, No. 4:10–CV–03514, 2011 WL 5057099, at *2 (S.D. Tex. Oct. 24, 2011) (collecting cases); *see also George-Baunchand v. Wells Fargo Home Mortg., Inc.*, No. H-10-3828, 2011 WL 6250785 (S.D. Tex. Dec. 14, 2011) (citing *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 555 (Tex. App.— Dallas 2009, pet. dism'd w.o.j.)). Thus, Ortiz's cause of action for breach of contract, to the extent he asserts it under HAMP, fails as a matter of law.

To state a claim for promissory estoppel, plaintiffs must plead facts showing (1) a promise, (2) foreseeability by the promisor that plaintiffs would rely on the promise; and (3) substantial reliance by plaintiffs to their detriment. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.25 (Tex. 2002) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). Promissory estoppel may not be used to create a contract that does not otherwise exist. *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660 (Tex. App.–Fort Worth 2010, no pet.).

Under section 26.02 of the Texas Business and Commerce Code, a "loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the . . . party's authorized representative." Tex. Bus. & Commerce Code Ann § 26.02(b) (West 2009). A "loan agreement means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation." *Id*. § 26.02(a)(2).

CMI asserts that a promissory estoppel claim can only be an exception to the statute of frauds in a situation in which the alleged promise is "a promise to sign an already existing written agreement that would itself satisfy the requirements of the statute of frauds" Dkt. 6. The promissory estoppel exception to the statute of frauds does not apply here because there is no allegation that there was an existing written agreement relating to the delay in foreclosure that CMI promised to sign. Instead, Ortiz relies on a unilateral notice of foreclosure. In this notice CMI states that "failure to cure the default by 01/12/12 will result in acceleration of the loan [such that] the entire balance will become due." Dkt. 1-4, Ex. B. This is a collection attempt, not a loan modification. Ortiz

9

asserts that he believed CMI could not foreclose on his home, as he cured the default before the date given in the notice of default. The notice, however, did not contain an express promise to *not* foreclose on the property. Dkt. 1-4, Ex. B. To the extent that Ortiz asserts the notice constituted a promise not to foreclose on the home for an indefinite time period, this alleged promise was not sufficiently definite to be enforced. *See Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 558 (Tex. App.—San Antonio 1998, no writ) (determining that a contract claim would be viable only when the promise is sufficiently definite to incur reasonable reliance); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 570 (Tex. App.—Dallas 1989, no writ) (concluding that a vague and indefinite promise cannot support a claim for promissory estoppel). Vague and indefinite statements about future events are insufficient to support a claim for promissory estoppel. *See City of Beaumont v. Excavators & Constructors, Inc.*, 870 S.W.2d 123, 138 (Tex. App.—Beaumont 1993, writ denied) (establishing that a statement that amounted to speculation about future events and that did not set a time frame for performance of the alleged promise could not support a claim for promissory estoppel); *see also Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1281 (11th Cir. 2003) ("[P]romissory estoppel has no application where the promise relied upon is for an indefinite duration.").

The power to accelerate the loan and foreclose the house upon default arises from the note and deed of trust. The promissory estoppel exception to the statute of frauds does not apply because there is no written promise to sign any agreement related to a loan modification. The wording of the notice of default does not suggest a promise to modify the original loan agreement and is, furthermore, not sufficiently clear enough to invite any detrimental reliance. The letter contains no mention of modifying Ortiz's loan, other than reciting the consequences of not curing the default. Therefore, CMI's motion to dismiss on Ortiz's promissory estoppel claim is GRANTED.

**D.     Declaratory Judgment**

Because declaratory relief is a procedural vehicle, Ortiz's state law declaratory relief claim was converted after removal to a claim under the federal Declaratory Judgment Act. *See, e.g., Redwood Resort Props., L.L.C., v. Holmes Co.*, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007) ("When a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202."). The federal Declaratory Judgment Act states, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Federal courts have broad discretion to grant or refuse declaratory relief. *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir.1991). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Declaratory Judgment Act gives federal courts the competence to declare rights, but it does not impose a duty to do so. *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). The Declaratory Judgment Act provides no relief unless there is a justiciable controversy between the parties. *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984).

There are a variety of assertions within Ortiz's declaratory judgment claim. In essence, however, Ortiz seeks declaratory relief specifying Ortiz's and CMI's rights and duties in connection with the note and the deed of trust. Dkt. 1-4. "When factual allegations are made indicating that two parties may be asserting ownership of a Note, which necessarily also affects whether a party representing itself to be the servicer has authority to act on behalf of the owner, dismissal at the

11

pleading stage is not appropriate." *Meas v. Bank of Am., N.A.*, Civil Action No. H–12–0571, 2012 WL 4962116, *3 (S.D. Tex. Oct. 16, 2012). *See generally Henry*, 2011 WL 6057505, at *6 (explaining that because a viable claim remains, the bank's argument to dismiss the declaratory judgment claim is unpersuasive).

As previously discussed, Ortiz has standing to contest the assignment of the lien, as he alleges that the assignment never occurred. Also, Ortiz's interference with an existing contract claim remains a justiciable controversy. Therefore, CMI's motion to dismiss Ortiz's declaratory judgment claim is DENIED.

**E.     Request for Leave to Amend**

Ortiz first requests that the court deny CMI's motion to dismiss, and, alternatively, seeks leave to amend his petition so as to address any items that the court finds need greater specificity. Dkt. 1-4. Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "a court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). However, while there is a "bias" in favor of amendment, "it is not automatic." *In re Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996). Courts must consider the following factors when determining whether to grant a request for leave to amend: "(1) undue delay; (2) bad faith; (3) dilatory motive on the part of the movant; (4) repeated failure to cure deficiencies by any previously allowed amendment; (5) undue prejudice to the opposing party; and (6) futility of amendment." *Ellis v. Liberty Life Assurance Co. of Bos.*, 394 F.3d 262, 268 (5th Cir. 2004).

While the court does not believe there is any dilatory motive or bad faith on the part of Ortiz with regard to his motion to amend, it is his first request to amend, and no undue prejudice would result, the court finds that amending the promissory estoppel would be futile. Neither the complaint nor the response alleges facts plausibly suggesting a sufficiently definite promise. Furthermore, the claim is barred by the statute of frauds. Therefore, Ortiz's motion to amend on his promissory estoppel claim is DENIED. Ortiz's promissory estoppel claim is DISMISSED WITH PREJUDICE.

### IV. Conclusion

CMI's motion to dismiss (Dkt. 6) is GRANTED IN PART AND DENIED IN PART. It is DENIED with respect to Ortiz's claims for tortious interference with an existing contract and declaratory judgment. It is GRANTED with respect to Ortiz's claim for promissory estoppel. The claim for promissory estoppel is hereby DISMISSED WITH PREJUDICE. Ortiz's motion to amend (Dkt. 8) is DENIED.

It is so ORDERED.

Signed at Houston, Texas on June 20, 2013.

_____
Gray H. Miller
United States District Judge